UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ERIC ZAHLER,                         :
                                     :
          Plaintiff,                 :     04 Civ. 10299 (LAP)
                                     :
          v.                         :         OPINION
                                     :
TWIN CITY FIRE INSURANCE COMPANY     :
and GREENWICH INSURANCE COMPANY,     :
                                     :
          Defendants.                :
------------------------------------x


LORETTA A. PRESKA, United States District Judge:


     Plaintiff Erik Zahler, President and Chief Operating Officer

of Loral Space & Communications Ltd. ("Loral") and a defendant in

a class action now pending against Loral and various of its

officers, brings this action pursuant to 28 U.S.C. § 2201 for a

declaration as to which of two insurers, Twin City Fire Insurance

("Twin City") or Greenwich Insurance Company ("Greenwich"), is

obligated to defend and indemnify him in the class action

pursuant to "claims made" insurance contracts entered

successively between the two insurers and Loral.  Plaintiff also

asserts claims against both defendants for breach of contract and

against Twin City for breach of the implied covenant of good

faith and fair dealing.

     Twin City and Greenwich have moved for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c).  Because the

wrongful acts alleged in the pending class action are
interrelated with wrongful acts alleged in a previous class
action that was the subject of a claim first made during the Twin
City policy period, Greenwich's motion for judgment on the
pleadings (docket no. 13) is granted, and Twin City's motion for
judgment on the pleadings (docket no. 17) is denied.


I.    Background

     Loral is a satellite communications company that owns and
operates a fleet of telecommunications satellites and manages a
global network that integrates its satellites with terrestrial
facilities. In Re Loral Space & Communications LTD Securities
Litigation, No. 01 Civ. 4388 (JGK) (S.D.N.Y. filed May 22, 2001)
(hereinafter the "Securities Litigation") Second Consolidated
Class Action Complaint (hereinafter "Securities Complaint")
¶ 13.  As of November 4, 1999, Loral owned 43% of the equity of
Globalstar, L.P. ("Globalstar"), a worldwide satellite telephone
network. Securities Compl. ¶ 13.

     Twin City issued a Directors, Officers and Company Liability
Policy ("Twin City Policy") to Loral effective between July 1,
2000 and April 23, 2001.  The Twin City Policy was extended
twice, so that it ran through April 23, 2003. Zahler Compl. ¶ 9.[1]

_____

     [1] Reference is to the Amended Complaint in this action dated
February 23, 2005.

2

Under the terms of the Policy, Twin City's coverage applied to "any claim first made . . . during the Policy Year . . . for any Wrongful Act committed or attempted, or allegedly committed or attempted, before or during the Policy year by any Insureds." Twin City Policy, End. 4, § 1.  The term "Wrongful Act" was defined to include any actual or alleged breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") or other United States statute. Twin City Policy, End. 4, § 2(C).

During the Twin City Policy period, Loral and various of its officers were served with a class action complaint alleging securities fraud. <u>See</u> <u>generally</u> Securities Compl.  The parties do not dispute that the wrongful acts alleged in the Securities Litigation were the subject of an insurance claim first made during the Twin City coverage period.

The Securities Complaint first filed in 2001[2] alleged that Loral officers, including Eric Zahler, <u>see</u> Securities Compl. ¶ 17, engaged in a course of conduct, comprised principally of public statements and filings, that misled investors about the state of Loral's financial health, specifically about the status and value of Loral's investment in Globalstar. Securities Compl. ¶¶ 29-106.  The complaint asserted a class period beginning with statements made in an <u>Aerospace Daily</u> article published on

---

[2] The original complaint in the Securities Litigation was filed on May 22, 2001.  All citations, however, refer to the Securities Complaint filed on June 9, 2003  ("Securities Compl.").

November 4, 1999, Securities Compl. ¶ 33, and continuing until

Loral's stock plunged to $1.15 on April 3, 2001. Securities

Compl. ¶¶ 102, 106.

Upon the expiration of the Twin City Policy, Loral secured

directors and officers liability coverage from the Greenwich

Insurance Company pursuant to a Management Liability and Company

Reimbursement Insurance Policy (the "Greenwich Policy"). Zahler

Compl. ¶ 14.  The Greenwich Policy initially ran from April 23,

2003 to April 23, 2004. Zahler Compl. ¶ 15.  The Greenwich Policy

provided, in pertinent part, that "[a]ll Claims arising from the

same Interrelated Wrongful Acts shall be deemed to constitute a

single Claim and shall be deemed to have been made at the

earliest time such Claim is made . . . ." Greenwich Policy

§ VI(B) (initial caps in original).  An endorsement to the policy

effective April 23, 2003, the effective date of the Greenwich

Policy, added the following language:

> No coverage will be available under this
> endorsement for Loss in connection with Claims
> for Fiduciary Wrongful Acts . . . based upon,
> arising out of, directly or indirectly
> resulting from, in consequence of, or in any
> way involving any fact, circumstance,
> situation, transaction, event or Fiduciary
> Wrongful Act which, before the effective date
> of this endorsement, was the subject of any
> notice given under any other management
> liability insurance policy, directors and
> officers liability policy, pension and welfare
> benefit plan fiduciary liability insurance
> policy or similar policy.

Greenwich Policy, End. 30, § 6(b).

4

The two insurance policies at issue contain congruent language defining a common term, "Interrelated Wrongful Acts." Under the language defining that term, if the acts alleged in the ERISA litigation are found to be wrongful acts interrelated with those in the Securities Litigation, then coverage belongs to Twin City; if not, then coverage belongs to Greenwich.

During the initial year of the Greenwich Policy, Loral and various of its officers were served with a class action complaint alleging fiduciary breaches under ERISA. See In Re Loral Space ERISA Litigation, No. 03 Civ. 9729 (LTS) (S.D.N.Y. filed Dec. 8, 2003) (hereinafter the "ERISA Litigation"). The ERISA class action filed in 2003, in which Eric Zahler was named as a defendant, alleges that various officers of Loral breached fiduciary duties owed to employees and other participants in Loral's 401(k) plan. ERISA Compl. ¶¶ 2, 4.[3] At the heart of the ERISA Complaint is a recitation of allegedly misleading statements and filings made by Loral officers relating to the state of Loral's financial health, specifically about the status and value of Loral's investment in Globalstar, during a class period commencing with publication of the Aerospace Daily article on November 4, 1999 and culminating in the Loral stock drop to $1.15 per share on April 3, 2001. ERISA Compl. ¶¶ 73-92. The

_____

[3] Reference is to the Consolidated Class Action Complaint for Violations of the Employee Retirement Income Security Act dated July 27, 2004.

ERISA Complaint asserts that the Defendants breached their fiduciary duties under ERISA by continuing to permit the Loral 410(k) plan to invest in Loral stock at a time when, because of the status of Globalstar investment, it was no longer a suitable or prudent investment option. ERISA Compl. ¶¶ 5, 64-92.

Served with notice of the ERISA Litigation, Twin City and Greenwich both denied coverage. Zahler Compl. ¶¶ 23-24. Greenwich takes the position that the wrongful acts alleged in the ERISA Litigation are interrelated with the wrongful acts alleged in the prior Securities Litigation and are therefore claims first made during the Twin City Policy coverage period. Zahler Compl. ¶ 25. Twin City takes the position that the claims alleged in the ERISA Litigation cannot be interrelated with the claims alleged in the Securities Litigation because, it asserts, only another claim under ERISA can be interrelated. Thus, according to Twin City, the ERISA Litigation claim was first made during the Greenwich Policy, not the Twin City Policy period. See Compl. Ex. 5 (May 12, 2004 letter acknowledging notice of the ERISA Litigation first given to Twin City in December 2003). Not surprisingly, Plaintiff takes the position that at least one of the insurers is wrong and must step forward and assume his defense. One point on which all the parties appear to agree is that New York law applies in this diversity action.

II.  <u>Scope and Standard of Review</u>

     To avoid converting this motion for judgment on the
pleadings into a motion for summary judgment, the Court must
refrain from considering matters outside the pleadings. <u>See</u> Fed.
R. Civ. P. 12(c); <u>Sira v. Morton</u>, 380 F.3d 57, 66-67 (2d Cir.
2004).  The Court of Appeals, however, has adopted an expansive
view of what is deemed included in the pleadings.  "A complaint
is deemed to include any written instrument attached to it as an
exhibit, materials incorporated in it by reference, and documents
that, although not incorporated by reference, are 'integral' to
the complaint." <u>Sira</u>, 380 F.3d at 67.  Here, Plaintiff has
annexed the following documents to the Complaint: the Twin City
Policy, Zahler Compl. Ex. 1; the Greenwich Policy, Zahler Compl.
Ex. 2; the ERISA Complaint, Zahler Compl. Ex. 3; a March 10, 2004
letter from agents of Greenwich acknowledging notice of the ERISA
Litigation by letter dated December 12, 2003 and denying coverage
of the ERISA Litigation, Zahler Compl. Ex. 4; and a May 12, 2004
letter from agents of Twin City acknowledging that notice of the
ERISA Litigation was first given in December 2003 and denying
coverage of the ERISA Litigation, Zahler Compl. Ex. 5.  In
addition, the Securities Complaint was referenced in Plaintiff's
pleadings, Zahler Compl. ¶ 25, and annexed to Greenwich's
pleadings, <u>see</u> Answer and Cross-Claim of Defendant Greenwich

Ex. 1.  All of the above documents have been considered by the Court in deciding the present motions.

In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), the court applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999) (citing <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir. 1994).  A court "may dismiss the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Id.</u> (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The court, however, need not credit legal conclusions asserted in the pleadings. <u>See</u> <u>Madonna v. United States</u>, 878 F.2d 62, 65 (2d Cir. 1989) ("Madonna's claims of fraud are his own 'legal conclusions [and] characterizations,' and these a court need not accept in considering a Rule 12(c) motion.").

III. <u>Contract Interpretation under New York Law</u>

The fundamental principle of contract interpretation under New York law is that contracts are construed according to the intent of the parties, <u>Greenfield v. Philles Records</u>, 98 N.Y.2d 562, 569 (2002) (citing <u>Slatt v. Slatt</u>, 64 N.Y.2d 966, 967,

rearg. denied 65 N.Y.2d 785 (1985)).  The best evidence of that intent is what the parties have written in their agreement. Id. (citing Slamow v Del Col, 79 N.Y.2d 1016, 1018 (1992).  "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield, 98 N.Y.2d at 569 (citing R/S Assocs. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32 (2002), rearg. denied, 98 N.Y.2d 693 (2002); W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (1990)); see also South Road Assocs. v. IBM, 4 N.Y.3d 272, 277 (2005).

The interpretation of an unambiguous contract is a matter for the court. Bethlehem Steel v. Turner Construction, 2 N.Y.2d 456, 460 (1957) ("It has long been the rule that when a contract is clear in and of itself . . . and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law . . . ."); Brainard v. New York Central R.R. Co., 242 N.Y.2d 125, 133 (1926) ("The construction of a plain contract is for the court . . . .  Plain and unambiguous words, undisputed facts, leave no question of construction except for the court."). Whether or not a contract is ambiguous is also a question to be decided by the court as a matter of law. Greenfield, 98 N.Y.2d at 569.  "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of

misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" Id. at 569-70 (quoting Breed v. Insurance Co. of N. Am., 46 N.Y.2d 351, 355 (1978), rearg. denied 46 N.Y.2d 940 (1979) (brackets in original)). Where an "agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." Greenfield, 98 N.Y.2d at 570 (citing Teichman v. Community Hosp. of W. Suffolk, 87 N.Y.2d 514, 520 (1996); First Nat'l Stores v. Yellowstone Shopping Ctr., 21 N.Y.2d 630, 638, rearg. denied 22 N.Y.2d 827 (1968)).

    "Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." In the Matter of the Estates of Covert and Another, 97 N.Y.2d 68 (2001) (citing Zasuly v. Mutual Benefit Health & Acc. Assn., 19 N.Y.2d 385 (1967); Hartol Prods. Corp. v. Prudential Ins. Co. of Am., 290 N.Y. 44 (1943)). An insurance policy is interpreted "in light of 'common speech' and the reasonable expectations of a businessperson." Belt Painting Corp. v. TIG Ins. Co., 100 N.Y.2d 377, 383 (2003). "It is unquestionably the rule that 'contracts of insurance. . . are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their

plain, ordinary and proper sense." <u>Hartol</u>, 290 N.Y. at 47
(quoting <u>Johnson v. Travelers Ins. Co.</u>, 269 NY 401, 408 (1936)).
Where "the allegations state a cause of action that gives rise to
the reasonable possibility of recovery under the policy," the
insurer is obligated to defend the insured. <u>Belt Painting</u>, 100
N.Y.2d at 383 (citing <u>Fitzpatrick v. American Honda Motor Co.</u>, 78
N.Y.2d 61 (1991)).


IV. <u>The Greenwich Policy</u>

    The Greenwich Policy in effect at the time of the ERISA
Litigation filing is a "claims made" policy.  Coverage under the
policy "only applies to claims first made during the policy
period." Greenwich Policy, Endors. 20.  The "Prior Notice
Exclusion" to the Greenwich Policy contains the following
language:

> The insurer shall not be liable . . . based upon,
> arising out of, directly or indirectly resulting
> from, in consequence of, or in any way involving
> any fact, circumstance, situation, transaction,
> event or Wrongful Act . . . which, before April
> 23, 2003, was the subject of any notice given
> under any other Management Liability Policy,
> Directors and Officers liability policy or similar
> policy.

Greenwich Policy § III(E) as modified by Endors. 21.  The Pension
and Welfare Benefit Plan Fiduciary Liability Endorsement
(hereinafter "Fiduciary Liability Endorsement") to the Greenwich

Policy specifically excludes from coverage fiduciary wrongful acts that were noticed under prior policies:

> No coverage will be available under this endorsement for Loss in connection with Claims for Fiduciary Wrongful Acts based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Fiduciary Wrongful Act which, before the effective date of this endorsement, was the subject of any notice given under any other management liability insurance policy, directors and officers liability policy, pension and welfare benefit plan fiduciary liability insurance policy or similar policy.

Greenwich Policy, Endors. 30, § 6(b).

In its "Interrelated Claims" provision, the Greenwich Policy states that "[a]ll Claims arising from the same Interrelated Wrongful Acts shall be deemed to constitute a single Claim and shall be deemed to have been made at the earliest of the time at which the earliest such Claim is made or deemed to have been made . . . ." Greenwich Policy, § VI(B). The Greenwich Policy defines Interrelated Wrongful Acts as "any Wrongful Act . . . based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events."

Both the filing of the ERISA Complaint on December 8, 2003 and notice of the ERISA Litigation to both insurers that same month occurred, temporally, within the Greenwich Policy period.

The issue for the Court, then, is whether the allegations contained in the ERISA Complaint are "Interrelated Wrongful Acts" (as that term is defined in the agreement between Loral and Greenwich) that exclude the claim from coverage because it was a claim first made as part of the Securities Litigation commenced during the Twin City Policy period.

In construing the language of the Greenwich Policy, the Court above all seeks to discern and effectuate the intent of the parties. <u>Greenfield</u>, 98 N.Y.2d at 69. Where possible, the Court must limit its inquiry to the language contained in the agreement itself, as that is the best evidence of the intent of the parties. <u>Id.</u> Here, the pertinent language is clear, unambiguous and, indeed, sweeping. The Prior Notice Exclusion to the Greenwich Policy explicitly exempts Greenwich from coverage of claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or Wrongful Act" that was the subject of notice "under any other Management Liability Policy, Directors and Officers liability policy or similar policy" prior to April 23, 2003. Greenwich Policy § III(E), as modified by Endors. 21.

To clarify matters further, the Fiduciary Liability Endorsement to the Greenwich Policy explicitly excludes coverage of "Claims for Fiduciary Wrongful Acts . . . in any way involving

13

any fact, circumstance, situation, transaction, event or
Fiduciary Wrongful Act" that was the subject of notice under "any
other . . . directors and officers liability policy" prior to
April 23, 2003.  The clear import of this endorsement is to
remove any doubt that the Prior Notice Exclusion to the Greenwich
Policy applies to acts alleged under a fiduciary duty theory of
liability.

A side-by-side review of the Securities Complaint and ERISA
Complaint reveals that the facts alleged in the two actions are
in many cases identical, compare ERISA Compl. ¶ 74 with
Securities Compl. ¶ 33; ERISA Compl. ¶ 76 with Securities Compl.
¶ 34; ERISA Compl. ¶ 77 with Securities Compl. ¶¶ 35; ERISA
Compl. ¶ 78 with Securities Compl. ¶ 39; ERISA Compl. ¶ 79 with
Securities Compl. ¶ 41; ERISA Compl. ¶ 81 with Securities Compl.
¶ 62; ERISA Compl. ¶ 82 with Securities Compl. ¶ 67; ERISA Compl.
¶ 83 with Securities Compl. ¶ 73; ERISA Compl. ¶ 84 with
Securities Compl. ¶ 76; ERISA Compl. ¶ 86 with Securities Compl.
¶ 93; ERISA Compl. ¶¶ 90-91 with Securities Compl. ¶ 102, and by
all means closely related.  To spell out just a few examples from
the list above:  both class actions allege a class period
beginning on November 4, 1999 with the publication of an
Aeroespace Daily article in which Loral CEO Bernard Schwartz
allegedly made misleading statements about the impact of a
bankruptcy filing by a company called Iridium, compare ERISA

Compl. ¶ 74 <u>with</u> Securities Compl. ¶ 33; both actions allege that Loral's February 7, 2000 press release contained misleading statements about the "roll-out" of Globalstar service to various regions of the world, <u>compare</u> ERISA Compl. ¶ 78 <u>with</u> Securities Compl. ¶ 39; and both actions allege that the pattern of misleading statements culminated in a plunge in Loral's stock price to $1.15 on April 3, 2001, <u>compare</u> ERISA Compl. ¶¶ 90-91 <u>with</u> Securities Compl. ¶ 102.

The insurance agreement between Loral and Greenwich contemplates the exact type of factual scenario presented here. The Interrelated Claims provision of the Greenwich Policy makes it clear that "Interrelated Wrongful Acts" are deemed a single claim and that the claim is deemed to have been made at the earliest time at which notice is given. Greenwich Policy § 6(B). Interrelated Wrongful Act is defined broadly to include wrongful acts "in any way involving any of the same or related facts, series of related facts, circumstances, situations, transactions or events." In this bargained-for exchange between Loral and Greenwich, it is clear that the intent of the parties was to exclude from coverage any alleged wrongful acts related, broadly speaking, to acts that formed the basis for a prior claim under another directors and officers liability policy. The Securities Litigation was a claim first made within the effective dates of the Twin City Policy.

15

As is clear from a comparison of the Securities Complaint to the ERISA Complaint, the Securities Litigation involved claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact" that was the subject of notice in the ERISA Litigation brought during the effective dates of the Greenwich Policy. The "fact[s]" that the ERISA Litigation arises out of, <u>viz.</u>, the alleged misstatements regarding the financial health of Loral's investment in Globalstar, are the same as those out of which the Securities Litigation arises. Thus, the Prior Notice Exclusion to the Greenwich Policy clearly and unambiguously excludes coverage of such a claim. Two courts in this district, presented with successive, related claims to which interrelated wrongful acts provisions applied, both held, as this Court now holds, that the first insurer's coverage applies. <u>See</u> <u>generally</u> <u>Seneca Ins. Co. v. Kemper Ins. Co.</u>, No. 02 Civ. 10088 (PKL), 2004 U.S. Dist. LEXIS (S.D.N.Y. May 21, 2004) (applying a "sufficient factual nexus" test to determine what constitutes an interrelated wrongful act); <u>Zunenshine v. Executive Risk Indemnity</u>, No. 97 Civ. 5525 (MBM), 1998 U.S. Dist. LEXIS 12699 (S.D.N.Y. Aug. 17, 1998) (same). If the "sufficient factual nexus" test were applied here, for the reasons stated above, the result would be the same.

Finally, if this Court were to hold that the Greenwich Policy covered the ERISA Litigation, despite the parallel facts alleged in the Securities Litigation, then the Prior Notice Exclusion and Interrelated Wrongful Act provision of the Greenwich Policy would be rendered meaningless, and Loral would have gotten more than it bargained for in its contract with Greenwich. Such a result is clearly disfavored under New York law. See, e.g., County of Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 628 (1994) ("An insurance contract should not be read so that some provisions are rendered meaningless."). Accordingly, Greenwich's motion for judgment on the pleadings is granted.


V.    The Twin City Policy

The Twin City Policy in effect when the Securities Litigation was filed is a claims made policy with an interrelated wrongful acts provision. Twin City Policy §§ IV(I), VIII(A), Endors. 4, § 1. Under the notice provision of the Twin City Policy, where a wrongful act "that may reasonably be expected to give rise to a Claim against any Director or Officer" is reported to the insurer during the policy period, "any Claim subsequently arising from such duly reported Wrongful Act shall be deemed under this Policy to be a Claim made during the Policy Period . . . ." Twin City Policy § VIII(A).  Interrelated Wrongful Acts are

defined by the policy as "Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of causally connected facts, circumstances, situations, events, transactions or causes." Twin City Policy § IV(I). Endorsement 4 of the Twin City Policy makes it clear that wrongful acts include "actual or alleged breaches of the responsibilities, obligations or duties imposed upon fiduciaries" by ERISA or other United States statutes. Twin City Policy Endors. 4 § 2(C).

Twin City argues, among other things, that because the Securities Complaint does not allege breach of fiduciary duty, it cannot be interrelated with the claims alleged in the ERISA Litigation and thus the ERISA Litigation is a claim first made during the Greenwich Policy period. This argument is without merit because it is contrary to the plain language of the agreement. Twin City's suggestion that the definition of Interrelated Wrongful Acts was narrowed by Endorsement 4 is directly contrary to the express language of the Endorsement that its purpose is to add coverage of ERISA-related wrongful acts to other wrongful acts covered by the Twin City Policy. Endorsement 4 does not separately define or alter the definition of Interrelated Wrongful Acts in the main body of the Twin City Policy. In fact, by the express terms of Endorsement 4, the extended definition of Wrongful Act applies "for purposes of the

extension of coverage by this Endorsement only." Twin City Policy, Endors. 4, § 3 (emphasis added). As discussed above, then, the Securities Litigation was a claim first made during the Twin City Policy period, and the ERISA Litigation is predicated on alleged wrongful acts that are identical or closely related to those alleged in the Securities Litigation.

Essentially the same scenario presented here was before the First Department recently in <u>Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins. Co.</u>, 304 A.D. 334 (1st Dep't 2003). In <u>Greenburgh</u>, an action was commenced against the insured during one insurer's claims made policy period. <u>Id.</u> at 335. A second action arising out of the same facts and circumstances was commenced during a second insurer's policy period. <u>Id.</u> The insured brought a declaratory judgment action after both insurance carriers denied coverage in much the same way that Twin City and Greenwich denied coverage here. <u>Id.</u> The court construed the first insurer's policy, which covered claims first made during the policy period or arising out of wrongful acts "logically or causally connected" to such claims. <u>Id.</u> at 336. <u>Greenburgh</u> upheld the lower court's determination that notice to the first insurer of an action first noticed during its policy period mandated coverage of a subsequent litigation arising out of the same facts and circumstances that gave rise to the initial litigation. <u>Id.</u> at 335-336. The holding of

19

<u>Greenburgh</u> is persuasive, and the same outcome is required here under New York law of contract interpretation.

The intent of the parties is of paramount concern in contract interpretation. <u>Greenfield</u>, 98 N.Y.2d at 69. In the absence of ambiguity, the Court must avoid straying from the language of the contract itself in divining the parties' intent. <u>Id.</u> Here, the clear, unambiguous language of the Twin City Policy points to one inescapable conclusion: the intent of the parties was to cover claims first made during the policy period and subsequent claims related to the same facts that were the subject of the initial claim or claims, including acts constituting fiduciary breaches. Any other reading of the contract would be at odds with "'common speech' and the reasonable expectations of a businessperson." <u>Belt Painting</u>, 100 N.Y.2d at 383. The wrongful conduct alleged in the ERISA Complaint is a claim first noticed to Twin City when the Securities Litigation was filed during the Twin City Policy period. Accordingly, coverage under the Twin City Policy extends to Loral officers and directors, including Plaintiff, for wrongful acts alleged in the ERISA Complaint.

## Conclusion

For the reasons stated above, Defendant Greenwich's motion for judgment on the pleadings (docket no. 13) is granted, and Defendant Twin City's motion for judgment on the pleadings (docket no. 17) is denied.

Counsel for Plaintiff and Twin City shall inform the Court by letter within two weeks of the filing of this Order of how they wish to proceed.

SO ORDERED

March 30, 2006

Loretta A. Preska, U.S.D.J.